# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

SHERRY F. KERSEY                                                                    PLAINTIFF

V.                                      NO. 4:14CV00500-JTR

CAROLYN W. COLVIN,                                                                  DEFENDANT
Acting Commissioner,
Social Security Administration

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff, Sherry F. Kersey, has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Both parties have filed Appeal Briefs, *Docs. 11 & 12*, and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's

decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

On August 19, 2011, Kersey filed an application for DIB, alleging disability since February 22, 2007. (Tr. 157-63.) In her Disability Report-Adult, she stated that she was disabled because of: a blood clot in her left leg; damage to veins in the groin area; a hernia in the groin; a bowel protrusion; and the inability to lift. (Tr. 200.) After her claims were denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge ("ALJ").

On November 28, 2012, the ALJ conducted an administrative hearing, where Kersey, her husband, and a vocational expert testified. (Tr. 61-99.) On her alleged disability onset date, Kersey was forty-four years old and had completed high school. (Tr. 66-67, 201.) She had past relevant work as a school cafeteria food service worker. (Tr. 67-69.) She testified that she stopped working in the cafeteria on a regular basis on February 22, 2007, but continued to "sub" after that date a few hours a week as needed. (Tr. 68-69, 178.)

In his January 25, 2013 decision, the ALJ found that Kersey: (1) had not engaged in substantial gainful activity from her alleged onset date, February 22, 2007,

through June 30, 2009, the date she last met the insured status requirements for DIB; (2) had "severe" impairments through her date last insured ("DLI") consisting of left leg pain and edema; (3) did not have an impairment or combination of impairments meeting a Listing; (4) had the residual functional capacity ("RFC") through her DLI to perform a restricted range of sedentary work, which precluded performance of her past relevant work; and (5) could perform other work existing in significant numbers in the national economy, with examples being a document preparer and a charge account clerk. (Tr. 24-33.) Accordingly, the ALJ concluded that Kersey was not disabled.[1]

On July 21, 2014, the Appeals Council denied Kersey's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 1-5.) Kersey then filed her Complaint appealing that decision to this Court. *Doc. 2*.

In Kersey's Appeal Brief, she argues that the ALJ erred: (1) in his physical RFC assessment; and (2) in discounting the credibility of Kersey and her husband.

For the reasons discussed below, the Court concludes that Kersey's arguments are without merit.

---

[1] *See* 20 C.F.R. § 404.1520 (explaining the sequential evaluation process).

## II. Discussion

### A.     The ALJ's RFC Assessment

On February 22, 2007, Kersey was admitted to the hospital for treatment of extensive deep vein thrombosis ("DVT") of the left lower extremity and left pelvis. (Tr. 323, 414-23, 529.) On February 26, 2007, she was discharged with instructions for bed rest, limited activities, and elevation of the left leg. (Tr. 416.) On May 9, 2007, a scan revealed that the DVT was "resolving." (Tr. 412.) On September 10, 2007, a scan showed evidence of an "old thrombus" without acute deep vein disease. (Tr. 402.) A third scan, on February 13, 2008, showed "no evidence" of DVT. (Tr. 400.)

Despite resolution of the DVT, Kersey continued to seek treatment, through February 12, 2008, for persistent leg pain and swelling, symptoms associated with "post phlebitic syndrome" or "post thrombotic syndrome."[2] After February 2008, there are no records of any treatment associated with DVT or post-phlebitic syndrome until January 2012.

Based on this evidence, the ALJ found that, although Kersey's DVT had

---

[2] Tr. 319 [06-26-07: patient "still having swelling" in the left lower extremity]; 531-33 [08-08-07: "persistent" swelling in the left leg and "intermittent pain" in the left groin "when she is on her feet"]; 318 [09-07-07: left leg "cramping and aching"]; 529-30 [11-12-07: "when she is on her left leg it swells and is occasionally uncomfortable"]; 250 [1-16-08; "persistent post phlebitic syndrome in the left leg" with swelling and pain "when she is on it for an extended period"]; 316 [02-12-08: patient reported "some" pain in left leg, but no swelling observed and leg "looks good"].

"resolved within seven months" and thus did not constitute a "severe" impairment,[3] her continuing leg pain and edema were "severe" during the relevant time period, February 22, 2007 through June 30, 2009. (Tr. 26-27, 30.) The ALJ accounted for Kersey's limitations and symptoms by determining that she had the physical RFC for a restricted range of sedentary work during the relevant time period, *i.e.*:  (1) the ability to stand or walk up to two hours in an eight-hour workday; (2) the ability to sit for up to six hours in an eight-hour workday; (3) the ability to perform only work done "for the most part" in the seated position with no more than a half-hour of standing or walking at a time; (4) the ability to occasionally climb steps or ladders; (5) the inability to use foot and pedal controls; (6) the ability to use her upper body or spine without restrictions; and (7) the ability to lift and carry twenty pounds occasionally and ten pounds frequently. (Tr. 28.)

Kersey argues that, in making this RFC assessment, the ALJ improperly afforded "no weight" to the "retrospective" opinions of two treating physicians: (1) Dr. Jennifer Faith, who was Kersey's primary care physician from 2006 through 2012;[4] and (2) Dr. Donald Patrick, a vascular surgeon who began treating Kersey in

---

[3]*See* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").

[4]On January 30, 2012, Dr. Faith prepared a Medical Source Statement of Ability to Do Work-Related Activities (Physical), assessing Kersey's abilities from "2009-present." (Tr. 575-76.) Dr. Faith opined that Kersey: (1) could stand and walk for about four hours during an eight-hour day;

January 2012.[5] The ALJ discussed the opinions from both physicians, but rejected them because they were all obtained three or more years after Kersey's DLI of June 30, 2009. (Tr. 30-31.)

According to Kersey, the opinions of Dr. Faith and Dr. Patrick are the only opinions regarding her functional limitations during the applicable time period and are thus critical in understanding "what type of problems she was having ... and when she was having them." She argues that, based on their opinions, the RFC assessment should have included provisions for "at-will walking," "limited" sitting and standing, elevation of the left leg, and sitting in a reclined or semi-reclined position. *Doc. 11 at 27-31*.

In the absence of contemporaneous medical evidence, the Eighth Circuit has recognized the probative value of retrospective opinions relating back to a claimed

---

(2) could sit for a total of about six hours; (3) needed to change positions and elevate her leg "frequently;' and (4) needed "to shift, at will, from sitting or standing/walking." (Tr. 575.)

On December 12, 2012, Dr. Faith wrote a "To Whom It May Concern" letter, describing the history of Kersey's treatment and conditions from February 2007 forward. (Tr. 253-54.) In the letter, she stated that, by September 2007, Kersey "had definitely developed a post thrombotic syndrome with chronic pain, aching, cramping, heaviness, swelling, reddish skin discoloration," which was "typically worse after walking or standing for long periods of time," and "improve[d] with resting or elevating the leg." Dr. Faith wrote that Kersey could not "go back to work" because "any long periods of standing more than even an hour" would cause "discomfort." (Tr. 254.)

[5]On December 17, 2012, Dr. Patrick wrote a letter stating that Kersey currently had post-phlebitic syndrome, had it during the two years after she developed DVT, and would "have difficulty with chronic venous insufficiency for the rest of her life." As treatment, he said she should: (1) wear compression stockings; and (2) avoid "prolonged sitting and standing unless walking breaks are incorporated at regular intervals as much as possible." (Tr. 252.)

period of disability. *Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008); *Grebenick v. Chater*, 121 F.3d 1193, 1199 (8th Cir. 1997); *Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995.) In addition, evidence of disability after the date last insured can be helpful to elucidate a medical condition during the relevant time, but cannot serve as the only support for a disability claim. *Pyland v. Apfel*, 149 F.3d 873, 877-78 (8th Cir. 1998).

These cases are distinguishable because, here, there is contemporaneous medical evidence from the relevant time period which supports the ALJ's RFC assessment. This evidence includes: (1) the opinion of Dr. David M. Johnson, who interpreted the scans and determined that Kersey's DVT had resolved by September 2007 (Tr. 402); (2) the records of conservative treatment received from September 2007 through February 2008 for Kersey's continuing leg pain and swelling; (3) the absence of *any* medical treatment for leg pain and swelling from February 12, 2008 through Kersey's DLI of June 30, 2009; (4) Kersey's use of over-the-counter medications for pain, including pain patches and Tylenol (Tr. 87-88); and (5) the opinion of Kersey's gynecologist, who performed a hysterectomy in December 2007 and imposed no post-surgical limitations other than no heavy lifting, no driving and pelvic rest for two weeks. (Tr. 535-36,)

In addition, the contemporaneous medical records showed that Kersey typically

reported pain and swelling when she was "on" her leg for extended periods. (Tr. 250, 322, 529, 531.) The ALJ accounted for this, limiting the RFC to "no more than a half-hour of standing or walking" at one time, no more than two hours of standing in one day, occasional climbing, and no use of foot or pedal controls. (Tr. 28.) No physician during that time period, including Dr. Faith, imposed the additional ongoing restrictions of "at will walking" or elevation of the leg. No physician imposed any long-term restrictions on Kersey's ability to work.

The opinions of Dr. Faith and Dr. Patrick, and other medical records, show that Kersey was diagnosed in 2012 with a venous aneurysm in her groin,[6] which appeared to have been contributing to the symptoms that she was experiencing during the relevant time period.[7] However, as discussed, regardless of Kersey's worsening symptoms and later diagnosis, the contemporaneous records do not support limitations to the extent that she was suffering from a disabling impairment between February 22, 2007 and June 30, 2009.

Thus, substantial evidence supports the ALJ's conclusion that, although Kersey

---

[6]Dr. Patrick diagnosed the aneurysm on August 20, 2012. (Tr. 553-55.) In November 2012, Dr. Patrick performed surgery removing the aneurysm, and another surgeon repaired an incisional hernia. (Tr. 578-87.)

[7]*See* Tr. 319 [06-26-07: patient reported "distended" veins in lower pelvis]; 531-32 [08-08-07: patient reported "intermittent" left groin pain, and "prominent veins" were observed in the left lower quadrant abdominal wall); 250 [01-16-08: noting a "prominent vein in the suprapubic region"); 316 [02-12-08: noting "some fullness" in left groin].

was impaired by her leg pain and swelling through her DLI, her symptoms at that time did not render her incapable of performing the type of restricted sedentary work described in the ALJ's RFC assessment.

### B.     The ALJ's Credibility Assessment

The Court concludes that the ALJ properly evaluated the credibility of Kersey and her husband, consistent with the Eighth Circuit's holding in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).

The ALJ cited *Polaski* and the applicable regulations and rulings. (Tr. 28-29.) Moreover, he identified several inconsistencies between the record and Kersey's subjective complaints of pain and limitations, including: (1) her ability to work part-time during the applicable period, which was similar to her hours before the alleged onset date; (2) her activities, including cooking, driving for one and one-half hours, and attending church with a stool to elevate her legs;[8] (3) the absence of a "strong work history," with only one year of substantial gainful activity; (4) the absence of objective medical findings to support disabling symptoms and limitations for a twelve-month period during the relevant time period; and (5) her use of over-the-counter pain medications during that period. (Tr. 29-30.)

---

[8] Although Kersey's statements about her activities were made in 2011 and 2012, she testified that her abilities and limitations had "pretty much remained the same" since 2008. (Tr. 85-86, 221.)

The ALJ also specifically discussed the testimony of Kersey's husband, Marcus Kersey, and gave valid reasons for discounting that testimony.[9]

## III. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Kersey's Complaint is DISMISSED, WITH PREJUDICE.

---

[9]He testified that, since February 2007, Kersey's left leg was "always swollen some," and that, "after an hour or two of doing things around the house, she pretty well has to be done for the day" due to leg pain and swelling. (Tr. 90-92.) The ALJ discounted his testimony because: (1) he was not "medically trained" to "make exacting observations as to the date, frequencies, types and degrees of medical signs and symptoms"; and (2) like Kersey's testimony, his was "simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." (Tr. 31.)

DATED this 3rd day of March, 2016.

                                                        _____
                                              UNITED STATES MAGISTRATE JUDGE